UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10CR293 RWS |
| | ) | |
| QUENTIN LATREL HALL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The Defendant filed a motion to suppress evidence and statements, and the Government filed a response thereto. A hearing on the Defendant's motion was held on August 16, 2010, and thereafter the Defendant filed a request for a transcript of the proceedings which was filed on August 24, 2010.

Based upon the evidence adduced at the hearing on the motion to suppress as well as a review of the written transcript of the hearing, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Robert Brandenberg is police officer with the Metropolitan St. Louis Police Department. On December 18, 2009, during the evening hours, he and his partner were on patrol on California Street in south St. Louis. At that time, they observed a red Yukon SUV with temporary license plates weaving and crossing into the oncoming lanes on California. At Gasconade Street, they observed the vehicle run a stop sign and fail to signal for a right turn.

Because of these traffic violations, Brandenberg activated his red lights and the Yukon pulled to the side of the street. Brandenberg was driving the police car, and his partner was seated in the passenger side. His partner got out of the police car, and walked in front of the police car between the police car and the Yukon. As the officer reached the front of the police car, the Yukon's back up lights activited, and the Yukon backed up very quickly directly at the officer, as if the gas pedal were depressed to the floor. The officer jumped out of the way of the Yukon, avoiding being hit. The car then sped off in a forward direction from the police. Brandenberg and his partner jumped into the police car, and followed the Yukon with red lights and siren activated. At the initial part of the chase, they talked by radio to Lt. Cole, who authorized a limited pursuit of the Yukon based on the fact that the car was wanted for attempted assault or actual assault on a police officer. Cole told Brandenberg that his car and one assist car would be allowed to pursue the Yukon.

The pursuit lasted about eighteen to twenty minutes, and went from south St. Louis on Gasconade Street on and off of Interstate Highway 70, eventually ending in far north St. Louis. During the pursuit, the Yukon violated many traffic laws and drove on railroad tracks and across fields and vacant lots in an attempt to avoid the police. During the chase, the Yukon blew out its tires apparently while riding down the railroad tracks and across fields. The Yukon eventually stopped when it became stuck hanging out over a four foot concrete wall while it was speeding through a vacant lot. At this time, Brandenberg's assist car had stopped its pursuit because it also had blown out its tires on the railroad tracks. Brandenberg and his partner got out of their car and approached the vehicle. As they did so, the officers observed two people in the car, the driver and a person in the front passenger side of the car. As Brandenberg approached the car, the driver was still depressing the gas pedal and spinning his wheels in an attempt to get free from the wall. Brandenberg

2

pulled his gun, and told the Defendant to put his hands up and to come out of the car. The Defendant ignored Brandenberg's request, and Brandenberg holstered his gun and obtained his flashlight. He used the flashlight to break the window out of the Yukon. Brandenberg then grabbed the driver (who he identified as the Defendant), and attempted to forcibly remove him from the Yukon. The Defendant and Brandenberg struggled, with the Defendant kicking Brandenberg struggling to get free. Brandenberg retrieved his baton and struck the Defendant twice on the legs. Both the Defendant and Brandenberg went to the ground, with Brandenberg wrestling with the Defendant in an attempt to restrain him and get him under control. Eventually, Brandenberg's partner came to his aid, and, with his help, Brandenberg and his partner were able to subdue the Defendant, get him under control, and handcuff him.

The officers searched the Defendant's person incident to his arrest, and found a vial containing white powder in one of his pockets. They then sat him up on the ground, and after a short time, they advised the Defendant of his complete Miranda rights. They effected this by reading the Defendant his full rights from a St. Louis police department Miranda form. The Defendant was asked if he understood his rights, and he stated that he understood them. He was then asked by Brandenberg if there was anything in the car that could be dangerous or pose a danger to anyone. The Defendant told Brandenberg that he had a gun in the Yukon, and had just gone down to south St. Louis to get even with a person who had shot at him earlier in the evening. Although the Defendant was complaining of leg pain, having been struck there by Brandenberg and asked for medical attention, he did not appear to be in pain. According to Brandenberg, the Defendant did not appear to be confused or excited, and was calm. No threats or promises were made to the Defendant, and he appeared to know what was going on, and answered questions appropriately.

3

Brandenberg called an ambulance, and the Defendant was taken to the emergency room at a hospital, where he was examined and diagnosed with contusions of the leg. The Defendant was found fit for confinement at the emergency room, and released by the emergency room to Brandenberg so he could be taken to jail.

Brandenberg initially attempted to search the Yukon at the scene of the stop, however, in order to search thoroughly for the gun, he would have to enter the inside of the Yukon to look in the trunk area of the Yukon. He was hesitant to do so because the Yukon was sitting precariously on the wall, and any movement inside the vehicle might make the vehicle fall off the wall. Because of this, he called city towing services, and the Yukon was towed to city hall tow lot. At that location, Brandenberg and an evidence technician unit searched the vehicle thoroughly, and in the trunk area of the car, they observed the butt of a rifle sticking out of a blue bag. They seized the blue bag, and determined that the rifle was an assault rifle, and seized it as evidence.

**Conclusions of Law**

A. Arrest of the Defendant

Based on the above, the undersigned concludes that the arrest of the Defendant is based on probable cause, and is therefore lawful. Police officers may arrest a person without a warrant if they have probable cause to believe that the person to be arrested committed a crime. Gerstein v. Pugh, 420 U.S. 103 (1975); Beck v. Ohio, 379 U.S. 89 (1964). Probable cause is a "fluid concept turning on the assessment of probabilities in a particular factual context--not readily or even usefully reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). In the context of a warrantless arrest, all that need be shown is a "fair probability" that a crime has been committed and that the defendant committed it. See Illinois v. Gates, supra. In the case now at bar, the undersigned

concludes that there was ample, if not overwhelming, probable cause to arrest the Defendant. The Defendant committed a felony offense in the presence of the officers by attempting to assault them. Thus, not only were they direct witnesses to the felony offense, they were the victims. In addition, the officers observed the Defendant commit many dangerous traffic violations. For the above reasons, the undersigned concludes there was ample probable cause to arrest the Defendant. Once the Defendant was arrested, the area within his reach as well as his person could be searched incident to the lawful arrest. See New York v. Belton, 453 U.S. 454 (1981). Therefore, both the arrest of the Defendant and the seizure of the vial of white powder were lawful.

    B. Statement of the Defendant

The undersigned concludes that under all of the circumstances in this case, the statement of the Defendant was voluntarily made, and therefore, was legally obtained. Regarding confessions made after an arrest, the Eighth Circuit Court of Appeals has stated as follows:

> The appropriate test for determining the voluntariness of a confession is "whether, in light of the totality of the circumstances, pressures exerted on the suspect have overborne his will."

United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990). In deciding whether defendant's will has been overborne, courts consider both the conduct of the officer and the capacity of the defendant to resist any pressure. As to the statement of the Defendant, although it was made after he was forcibly subdued and was in handcuffs, the testimony of the officers shows that he was not questioned until he had calmed down after the arrest. Although he complained of his legs hurting because of the force used during the arrest, he did not appear to be in any overt pain, and appeared to be lucid, calm, and not confused. In addition, he was fully advised of his rights, and stated he understood his rights before any questions were asked of him. Further, the evidence shows that he

was not threatened or promised anything in return for his statement. Also, he was not questioned at any length by the officers except to ask him whether there was anything of danger in the car. The above being the case, the undersigned concludes that, under the facts presented, the Defendant's will was not overborne and his statement was voluntarily made. Thus, based on the above, the undersigned concludes the Defendant's statements were voluntarily made after the Defendant was fully advised of his rights and knowingly waived those rights. Miranda v. Arizona, 384 U.S. 436 (1966); North Carolina v. Butler, 441 U.S. 369 (1979); Colorado v. Connelly, 479 U.S. 157 (1986); Moran v. Burbine, 475 U.S. 412 (1986); United States v. House, 939 F.2d 659 (8th Cir. 1991).

### C. The Search of the Yukon

The Fourth Amendment does not require police to obtain a warrant to search an automobile or other moving vehicle when they have probable cause to believe that it contains contraband or evidence of criminal activity. See Chambers v. Maroney, 399 U.S. 42 (1970); Arkansas v. Sanders, 442 U.S. 753 (1979). Further, vehicle searches performed after exigent circumstances lapse are valid as long the police legitimately could have searched the automobile at some point. Thus, in Chambers v. Maroney, supra, the Supreme Court upheld the warrantless seizure and subsequent search of a car at a police station because there was probable cause at the time of the stop to justify an immediate search. Further, in Florida v. Meyers, 466 U.S. 380 (1984), the Court upheld the warrantless search of an impounded car that had already been subject to a legitimate inventory search. As far as probable cause to search the vehicle, the Supreme Court has stated as follows:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life upon which reasonable and prudent men--not legal technicians--act.

Brinegar v. United States, 338 U.S. 160, 175 (1949). Probable cause as stated above is a "fluid concept turning on the assessment of probabilities in a particular factual context--not readily or even usefully reduced to a neat set of legal rules." See Illinois v. Gates, supra. Probable cause may be based on the totality of the circumstances present, and all that need be shown for probable cause to search is whether a "fair probability" that contraband or evidence of a crime will be found in the area to be searched.

Based upon the above, the undersigned concludes that the search was lawful. The search of the vehicle was made at a secondary location, much the same as was the search in Chambers v. Maroney, supra. In addition, the officers had probable cause to believe that there was a weapon in the vehicle, and that weapon was linked both to an investigation of the Defendant's planned assault on the person who had shot at him earlier in the evening, as well as being evidence of the reason why he attempted to back up over the police officers and fled from them. Therefore, the undersigned concludes that the search of the vehicle and the seizure of the gun was lawful.

## Conclusion

Therefore, the undersigned concludes that the motion to suppress should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion to Suppress Evidence and Statements [Doc. #17] be **denied**.

Further, the parties are advised that they have fourteen (14) days, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990)

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this   20th   day of September, 2010.